### JESSE LAZEAR *vs.* THE NATIONAL UNION BANK OF MARYLAND, AT BALTIMORE.

*Inadmissibility of Parol evidence to vary a Written contract— Statute of Frauds—When Usury does not avoid a Contract —National Banks not authorized under the Banking Act to purchase Notes—Province of the Jury.*

Parol evidence is not admissible to contradict, vary, add to, or sub- tract from the terms of a written instrument. When parties have entered into a written agreement, it is only reasonable to suppose, that they have introduced into the written instrument every mate- rial term and circumstance; and, consequently, all parol testimony of conversations held between the parties, whether before, or after, or at the time of the completion of the contract, will be rejected.

Where the Statute of Frauds requires a contract to be in writing, to make it valid, it cannot be partly in writing and partly in parol.

An action was instituted by the appellee against the appellant to recover on the following guaranty of the latter, executed on the 3rd of February, 1870. "For value received, I hereby guarantee to the National Union Bank of Maryland, at Baltimore, all liabilities to said bank, of Lazear Brothers, now existing, or which may hereafter arise, to the extent of twenty-five thousand dollars, I hereby holding myself liable to said bank to that extent for all paper that may be held by the bank, of Lazear Brothers, either as drawers or endorsers, in the same manner as if endorsed by me, I hereby waiving notice of protest of such paper." The defend- ant offered parol evidence for the purpose of raising and explain- ing a latent ambiguity in the guaranty—that there was more than one class of paper held by the Bank, to which the contract of guaranty might be applied, and contended, that the evidence was admissible to show, that the parties intended it to apply to, and cover only such paper as should be discounted by the bank *for the benefit* of Lazear Brothers. HELD:

That there was no obscurity or ambiguity in the language employed, nor any uncertainty as to the subject-matter upon which the con- tract was intended to operate; that to the extent of twenty-five thousand dollars it covered *all* paper that might be held by the

Bank, upon which Lazear Brothers were either drawers or endorsers; and that the evidence offered, which could have had no other effect than to limit and restrict the terms of the guaranty, and to show that the language used in it did not mean what it clearly and plainly expressed, was inadmissible.

The demand and receipt by a National Bank of usurious interest from endorsers upon notes discounted by it, the payment of which notes was guaranteed to the bank by L. in a written guaranty, does not avoid the contract of guaranty between L. and the Bank.

A National Bank has no authority under the Banking Act to use its funds in purchasing notes, and can acquire no title thereto by the purchase.

Where a guaranty is given to a National Bank for all liabilities to said bank of certain parties, then existing or which might thereafter arise, to the extent of an amount specified, the guarantor holding himself liable to that extent for all paper that might be held by the Bank of said parties, either as drawers or endorsers, and the Bank subsequently discounts paper, of which said parties were drawers or endorsers, it is exclusively within the province of the jury in an action by the Bank against the guarantor, to determine whether the money was parted with by the Bank on the faith of the guaranty or otherwise.

APPEAL from the Superior Court of Baltimore City.

Lazear Brothers, who had been for some years engaged in the wholesale grocery business, keeping their commercial account in the Western National Bank of Baltimore, in 1868, at the invitation of Mr. William W. Spence, a director in the National Union Bank of Maryland, transferred their account to the latter bank. Becoming its depositors or customers, they frequently offered for discount to the appellee country paper, mostly of their Western country customers, which was unknown to the Bank; they also offered notes, to a limited extent, drawn by their father, the appellant, to their order and by them endorsed.

This action was instituted by the appellee to recover of the appellant on the following guaranty:

" For value received, I hereby guarantee to the National Union Bank of Maryland, at Baltimore, all liabilities to

said bank of Lazear Bros., now existing, or which may hereafter arise, to the extent of twenty-five thousand dollars, I hereby holding myself liable to said bank to that extent, for all paper that may be held by the bank of Lazear Bros., either as drawers or endorsers, in the same manner as if endorsed by me, I hereby waiving notice of protest of such paper."

        (Signed,)        " JESSE LAZEAR."

At the trial of the cause, the appellee offered in evidence the foregoing guaranty, which was conceded to have been executed on the 3rd of February, 1870, and proved the genuineness of the appellant's signature thereto. The appellee also offered in evidence seven promissory notes, of which it was the holder, all drawn by Lazear Brothers, to their own order, and endorsed by themselves, six of which were also endorsed by W. D. Schurtz & Co., who were also customers of the appellee, and for whom the said six notes were discounted, the proceeds being carried through the books of the appellee to the credit and for the benefit of said W. D. Schurtz & Co., by whom these notes were offered for discount. The remaining note, dated the 22nd of June, 1872, at ninety-five days, for $5000, was *purchased* by the appellee from James Winchester & Son, brokers. The notes were all put in evidence, subject to exception. It was proved by Mr. Taylor, President of the appellee, that these notes were acquired by the appellee on the faith of and looking to the guaranty given by the appellant; and that payments had been received on account of the six notes by collection of a note of August. Douglass, obtained as a collateral from Schurtz & Co., and by dividends from the trustee of Schurtz & Co., and that payments had been made on all the notes by dividends received from the assignees in bankruptcy of Lazear Brothers. This action was brought to recover the balance due on these notes. It was in evidence that the six notes referred to, were discounted at the rate of seven and one-

half per centum per annum, by agreement between the parties and the appellee, and the remaining note was bought at the rate of nine per cent. per annum.

*First Exception.*—The appellant, during the cross-examination of Mr. W. W. Taylor, President of the appellee, proposed to him this question: "Tell the jury what was the occasion of this paper (referring to the guaranty offered in evidence) being suggested," but the question was objected to by the appellee, thereupon the appellant, in order to explain his purpose in asking such question, and the proof intended to be elicited thereby, offered the following statement:

"The defendant, for the purpose of showing that the indebtedness of Lazear Brothers to the Bank, as its customers, and for paper drawn or endorsed by them and discounted by the Bank for their account, and not the general indebtedness of Lazear Brothers to the Bank for any paper of theirs which it might buy from outside parties, or discount for others of its customers, was the subject of the guaranty given in evidence. And for the further purpose of enabling the Court to apply the said guaranty to its proper subject by reference to the surrounding facts and circumstances. And for the further purpose of proving the real consideration of the said guaranty between the parties thereto. And also for the purpose of enabling the Court to determine whether or not the said guaranty was a continuing guaranty. And for the purpose of showing a latent ambiguity in said guaranty as to the subject-matter to which it was applicable and of removing said ambiguity, offered to prove:"

"(That the firm of Lazear Brothers were customers of the plaintiff at the date of the guaranty, and had so been for two years or thereabouts prior thereto; that they had been prior to and were at that date in the habit of asking and receiving discounts from the plaintiff on paper of their [Lazear Brothers'] customers, endorsed by themselves, and

sometimes by their father, the defendant in this case; that it was often inconvenient to procure the endorsement of defendant, as he was a resident of the county.) And that the said guaranty was requested of the said Lazear Brothers by the plaintiff, and given accordingly by the defendant to the plaintiff, as a substitute for such endorsements in the future, and to prevent the delay and inconvenience of obtaining them, and for the purpose of giving credit to Lazear Brothers in their direct dealings with the plaintiff as its customers, and in respect to paper discounted, or to be discounted by it for their direct benefit and account, and on their application, and not otherwise. And also to show that there was an express agreement and understanding at the time of the delivery of said guaranty that it was only to apply to paper discounted for the use of Lazear Brothers."

But the appellee objected to the admissibility of the proof so offered, and to every part of it except to the introductory part thereof contained within brackets, and the Court (DOBBIN, J.) excluded all of the said proof, except the part aforesaid, from the jury; to which ruling of the Court, and the exclusion of the proof from the jury, the appellant excepted.

*Second Exception.*—The appellant, after the plaintiff had closed its case in chief, presented to the Court a statement setting forth the proof intended and offered to be given by William W. Spence, and by the defendant, and by other witnesses in his behalf, as follows:

[ "The defendant offers to prove by William W. Spence, a director of the plaintiff, prior to and at the time of the execution of the guaranty sued upon, and by the defendant, and other witnesses, that the firm of Lazear Brothers were invited by the said Spence to transfer their account from the Western Bank to the National Union Bank, (the plaintiff,) and did so at his invitation; that they were in the habit of offering for discount by said plaintiff a good

Lazear *vs.* Natl. Union Bank of Md.

deal of country paper of such as the Bank by its rules of discounting required, two dollars for one, unless there was a city endorser, besides the customer offering the same;] that at a meeting of the Board, in which the matter was discussed, the said Spence suggested that, in order to protect the Bank, in discounting such paper for Lazear Brothers, and to supersede the necessity of exacting two for one, or an additional city endorser, the Bank should request Lazear Brothers to give it a guaranty from their father, the defendant, of the same sort as the one he had given the Western Bank, to the knowledge of the said Spence, and whereby he should indemnify the Bank to a certain amount for such discounts as the Bank might make for Lazear Brothers; that the Board approved of the suggestion, and authorized Mr. Spence to communicate it to Lazear Brothers, which he did, and they agreed accordingly to procure such a guaranty on such purpose from their father, to the amount of $25,000; that Mr. Spence reported to the Board his conversation with the Messrs. Lazear and its result, and their promise to procure such a guaranty, which the Board approved and accepted, and requested Mr. Spence to see the Messrs. Lazear Brothers and ask them to see Mr. Mickle, the cashier of the plaintiff, who would prepare such a paper, which Mr. Spence accordingly did; that James Lazear, one of the firm, accordingly saw Mr. Mickle, who gave him the guaranty here offered in evidence, which he took to the defendant, who asked whether it was to the same effect as the guaranty above mentioned, given to the Western Bank, *i. e.*, to guarantee payment of paper discounted by the Bank for Lazear Brothers, to which said James Lazear, in good faith and so believing, answered in the affirmative, whereupon the said defendant, in like good faith and so believing, signed the said guaranty, without reading the same; that said James Lazear took the said guaranty to Mr. Mickle, and delivered it to him,

saying to him, that it was of course understood between them, that said paper guaranteed nothing but the paper signed by, or endorsed by Lazear Brothers, and discounted by the Bank for them, to which Mr. Mickle replied, "That's all;" and said Lazear delivered the guaranty to him accordingly with that common understanding between them, so expressed and recognized by both, and not otherwise."

"This evidence is offered to show, not merely the subject of the said guaranty, and apply the language of the guaranty to such subject, and for the other purposes named in the defendant's offer of evidence, heretofore made and rejected, but also to show that the guaranty as offered and construed by the plaintiff, was not the contract or guaranty of the defendant, and that the use attempted to be made of it, by the plaintiff in this action, and for the purposes of recovering therein upon or to the extent of the notes offered in evidence, would be a fraud on the defendant."

But the Court on the plaintiff's objection, excluded all proof as to the matters and things contained in the said offer, except the portions included within brackets; to this ruling of the Court, and the exclusion of the proffered proof the defendant excepted.

*Third Exception.*—The appellant further offered in evidence an account furnished to him by the appellee, showing the amount of interest charged to the firm of Lazear Brothers by the appellee from September 13th, 1869, to September 9th, 1872, which was offered for the purpose of proving, in connection with other evidence given or to be given, that the appellee knowingly and unlawfully charged to, and reserved, received and took from Lazear Brothers, a rate of interest greater than that allowed by the law of the State of Maryland, in violation of Revised Statutes of the United States, Title lxii, sections 5197 and 5198. The claim of the appellant and the purpose of said

evidence being to establish that the appellant was entitled to have the whole of said interest credited for his benefit, to the said Lazear Brothers, in account between them and the appellee, or to recoup, or set-off the same on their behalf, and for his benefit against the appellee's demand in this action.

But the appellee objected to the admissibility of said offer or any part thereof, and the objection was sustained by the Court. To this ruling and action of the Court the defendant excepted.

*Fourth Exception.*—The appellant further offered to prove by William L. Lazear, in open Court, the matters and things contained in his deposition *de bene esse*, theretofore taken in this case. But the appellee objected to the admissibility of said matters and things in evidence, or any part thereof, and the Court excluded all of such proof from the jury; and to this ruling the appellant excepted.

*Fifth Exception.*—William L. Lazear was then examined, and testified among other things, that after the execution of the guaranty of February 3rd, 1870, he did in one instance offer for discount to the appellee, some paper drawn by his firm, (Lazear Brothers,) but that the same was not discounted, and that no reason was assigned for its being turned down; that the paper generally offered by them for discount was that of customers residing in Pittsburg, and other large cities out of Maryland; that in discounting their paper, the Bank requested his firm through one of its agents, to give an endorsement on out of town paper, shortly after their account was opened, probably in January, 1870.

The witness was then asked " whether the Bank, (the appellee,) required from him anything else as a security, except endorsement upon country paper," to which question, he replied, " the same messenger, the same agent of the bank asked for a guaranty in lieu of such endorsement;" thereupon the appellee objected to all of said

answer, except "that the Bank asked for a guaranty," and the Court excluded the other part of said answer, *i. e.* "in lieu of an endorsement," and the appellant excepted to such exclusion.

*Sixth Exception.*—After further proof, and the testimony on both sides being closed, the defendant filed a formal motion for the exclusion of the several promissory notes which had been offered in evidence subject to exception; this motion the Court refused. The plaintiff offered the following prayer:

If the jury find from the evidence, that the guaranty offered in evidence by the plaintiff, dated Feb. 3rd, 1870, was executed by the defendant and accepted by the plaintiff, and that the seven promissory notes offered in evidence were executed by Lazear Brothers, as drawers, and were discounted by the plaintiff, as shown by the evidence, and have been held by the plaintiff ever since, and that they were so discounted by the plaintiff, looking to the said guaranty, and on the faith thereof, and that said Lazear Brothers made default in the payment of said notes, and that they still remain unpaid, except to the extent of the payments offered in evidence, then the plaintiff is entitled to recover the amount of said notes with interest, less the payments thereon, as offered in evidence; unless the jury shall find that the note for $5000, offered in evidence, was in fact discounted by the plaintiff for the use and benefit of Lazear Brothers, at a rate of interest greater than six per cent., in which case the jury will (also deduct from the amount of said note, in addition to the credits above mentioned, the amount of interest reserved by the plaintiff in making said discount.)

And the defendant, should the Court decline to exclude from the consideration of the jury the promissory notes given in evidence by the plaintiff, subject to exception, prayed the Court to instruct the jury as follows:

Lazear *vs.* Natl. Union Bank of Md.

1. That if they shall believe from the whole evidence in the cause, that the guaranty of the defendant, construed in the light of the circumstances under which it was demanded and executed, and which have been given in evidence, applies only to liabilities of Lazear Brothers, contracted by them as customers of the Bank, and in their own dealings with it as such customers, and not to paper discounted for or purchased from other persons by the Bank, then the verdict of the jury must be for the defendant.

$1\frac{1}{2}$. That if the jury shall find from the relative position, and the relations of the Bank and its customers, Lazear Brothers, at the time of the execution of the guaranty in controversy, and from all the circumstances surrounding the transaction, as given in evidence, that the said guaranty was intended by and between the parties thereto, to apply only to the liabilities which had been or might thereafter be incurred by Lazear Brothers to the Bank, in the dealings between it and them as Bank and customers, and shall further find that the promissory notes produced in evidence by plaintiffs, became the property of the Bank in the manner and under the circumstances testified to by the witnesses, Messrs. Taylor and Winchester, then the defendant is not liable for said notes under his said guaranty, and the verdict of the jury must be for defendant.

2. If the jury shall find from the whole evidence that the guaranty of defendant was demanded and given for the purpose of securing the Bank against loss, upon usurious transactions had or to be had between the Bank and Lazear Bros., then the said guaranty was void, and the plaintiff cannot recover thereupon in this action.

3. If, however the jury shall find from the whole evidence that the said guaranty was not demanded or given, or intended between the parties thereto, to secure the Bank against loss upon usurious transactions between it

and Lazear Brothers, their verdict must still be for the defendant, it being admitted that the notes offered in evidence by the plaintiff were knowingly discounted or acquired by the plaintiff at usurious rates.

4. If the jury shall hold that the construction of the defendant's guaranty, under and in view of all the evidence in the cause, is for the Court, and shall reject the prayers of defendant, marked respectively, "1 and $1\frac{1}{2}$," the defendant prays the Court to instruct the jury, that in view of the whole evidence in the cause, the said guaranty applies only to such liabilities of Lazear Brothers, as had been or might be incurred by them as customers of the Bank, and in dealings between it and them as Bank and customers; and if the jury shall find that the liability of Lazear Brothers, upon the promissory notes given in evidence, was not incurred by them as such customers and in such dealings, the plaintiff is not entitled to recover.

5. And the defendant further prays the Court, so construing said guaranty, to determine, as matter of law,. that the said guaranty properly construed, does not apply to usurious transactions between the plaintiff and Lazear Brothers, and it being admitted by the plaintiff that the plaintiff discounted all the notes in evidence at usurious rates, defendant prays the Court to instruct the jury to find for the defendant.

$5\frac{1}{2}$. That there is no evidence in the cause, that at the time of the execution and delivery of the guaranty in suit, the defendant was notified or knew that usurious transactions of any sort were in contemplation of the plaintiff under said guaranty, or that the defendant was ever thereafter notified or knew that any transactions were had or contemplated by the plaintiff, or ever assented to or authorized such transactions in any way. And in the absence of such evidence the plaintiff is not entitled to recover upon the notes in controversy, which are admitted to have been discounted at usurious rates.

6. If the jury shall find that six of the notes offered in evidence, drawn by Lazear Brothers, were discounted by the plaintiff, for the use and benefit of W. D. Schurtz & Co., customers of the said plaintiff, and by whom said notes were endorsed to the plaintiff, and that the same were duly protested for non-payment, and were then, and now are, held by the plaintiff, and that said Schurtz & Co., continued to be customers of said plaintiff down to the time of the institution of this suit, and that a balance in favor of said Schurtz & Co., is credited to them on the books of the plaintiff under date of October —, 1872, and that said balance was carried to the account of said Schurtz & Co., in February, 1873, and that during the month of February, 1873, large sums of money were deposited with the plaintiff by said Schurtz & Co. And shall further find, that neither the balance credited in October, 1872, nor any portion of the subsequent deposits made by Schurtz & Co., as aforesaid, were held or applied by the plaintiff in payment of the said notes given in evidence, then the plaintiff failed to exercise its rights as a Bank, and was guilty of a breach of duty towards the defendant under the guaranty offered in evidence; and if the jury shall find that the plaintiff had funds of Schurtz & Co. in its custody, after the dishonor of said notes, sufficient to pay the same, and did not hold and apply the said funds to the payment thereof, it is not entitled to recover the amount of said notes in this action. Or if the jury shall find the facts first above recited, and shall further find that the plaintiff, after the dishonor of said notes, had funds of Schurtz & Co. in its custody sufficient to pay the said notes in part, but failed so to apply the same, then the plaintiff is not entitled to recover to the extent of such funds on the said notes against the defendant.

7. If the jury shall find from the evidence that the note of June 22nd, 1872, drawn by Lazear Brothers, payable to

their order ninety-five days after date, for $5000, was not discounted by the plaintiff for said Lazear Brothers, but that the same was purchased from James Winchester & Son, note and bill brokers, without the knowledge or by the direction of Lazear Brothers, as testified to by the witness, Winchester, then the said note was obtained by the plaintiff in contravention of the seventh sub-section of section 5136, of the Revised Statutes of the United States, defining the powers of the National Banks, and the plaintiff is not entitled to recover the amount thereof under the guaranty offered in evidence.

8. If the jury shall find from all the facts and circumstances offered in evidence, that the guaranty dated February 3rd, 1870, was requested by the plaintiff, and was executed by the defendant to indemnify the plaintiff against loss on notes, either drawn or endorsed by the Messrs. Lazear Brothers, and which the plaintiff had obtained, or might obtain, in the usual and legitimate course of its business ; and if they shall further find, that the notes offered in evidence were obtained either from the witness, Winchester, or from others, at a rate of interest greater than that which is allowed by the law of Maryland, then the said notes cannot be protected under the said guaranty, and the plaintiff is not entitled to recover upon the same.

9. If the jury shall find from all the facts and circumstances of the case, that the guaranty dated February 3rd, 1870, was requested by the plaintiff from the Messrs. Lazear Brothers, and was executed and delivered by the defendant with the understanding and intention between the plaintiff and the defendant, and for the purpose of securing the plaintiff against loss in transactions forbidden by law in the usurious purchase or discounting of notes drawn or endorsed by the Meesrs. Lazear Brothers, then the said guaranty is illegal and void, and the plaintiff is not entitled to recover upon the same.

10. If the jury shall find from all the facts of this case, that the plaintiff, prior to the 3rd of February, 1870, was a

National Bank, located in the City of Baltimore, and organized under and by virtue of the provisions of an Act of Congress, approved June 3rd, 1864, entitled an "Act to establish a national currency by a pledge of United States bonds, and for the circulation and redemption of the same," and that the Measrs. Lazear Brothers then were, and thereafter continued to be, merchants of said city, and depositors with and customers of said plaintiff, and that the plaintiff before the said date undertook and agreed to discount notes, either drawn or endorsed by said Lazear Brothers, at a uniform rate of interest greater than that which is allowed by law ; and shall further find that subsequently to the agreement aforesaid, the said plaintiff requested from said Lazear Brothers, a guaranty to secure the plaintiff against loss on notes so discounted by the said plaintiff, and that the guaranty offered in evidence was obtained by said Lazear Brothers from the defendant, and by them was delivered to the plaintiff, and was accepted by the plaintiff in contemplation of and for the furtherance and promotion of the said agreement entered into by and between the plaintiff and Lazear Brothers ; (if the jury shall find the same,) and if the jury shall also find that on all the notes offered in evidence by the plaintiff, the plaintiff took, received, reserved or charged interest at the rate of seven and one-half per centum, or any rate greater than that which is allowed by the law of the State of Maryland, then the said guaranty was and is a contract made in contemplation and for the furtherance and promotion of acts prohibited by the supreme law of the land, contrary to the policy of the State of Maryland, and with reference to—as recognized by the Revised Statutes of the United States, and is illegal and void, and the plaintiff is not entitled to recover in this action.

(*Eleventh prayer wanting.*)

12. If the jury shall find their verdict for the plaintiff under the instructions of the Court, in assessing the

damages to which the plaintiff may be entitled, the jury are not at liberty to award an aggregate sum greater than the respective amounts of principal which they shall find from all the evidence were paid by the plaintiff by way of discount on the several notes offered in evidence, without interest on said principal sums from the maturity of said several notes, and subject to deductions for payments made on account of the same; with interest on such payments in the discretion of the jury.

13. If the jury shall find that the defendant as testified by himself, agreed to the compromise with Schurtz & Co., as set forth or referred to in his letter of Feb. 21st, 1873, and never afterwards agreed to any other composition or arrangement, by deed or otherwise, between said Schurtz & Co. and the plaintiff; and shall further find, that the plaintiff, without the authority, assent or approval of the defendant entered into and accepted the arrangement provided for by the deed of trust offered in evidence, such unauthorized acceptance on the part of the plaintiff, released the defendant from the liability sought to be enforced in this action, on account of the notes discounted for Schurtz & Co. by the plaintiff; which have been offered in evidence.

14. That the plaintiff is not entitled to recover in this action, except as to such of the promissory notes (if any) given in evidence, as the jury may find from all the facts and circumstances in evidence, to have been discounted on the faith of the guaranty of the defendant, offered in evidence, and if the jury shall find that none of said notes were discounted on the faith of said guaranty, their verdict must be for the defendant.—(*Granted as a more definite explanation of the requirement to recovery asked in plaintiff's prayer.*)

And the plaintiff offered the exception following:

The plaintiff excepts to the granting of the fourteenth prayer of the defendant, because there is no evidence in

the cause that the seven notes offered in evidence, were not discounted on the faith of the guaranty. And because there are no facts or circumstances in evidence in the cause, from which the jury can infer that said notes were not discounted on the faith of the guaranty.

The Court refused to grant the plaintiff's prayer, but modified the same, and granted it as so modified, as follows:

1. If the jury find from the evidence that the guaranty offered in evidence by the plaintiff, dated Feb. 3rd, 1870, was executed by the defendant, and accepted by the plaintiff, and that the seven promissory notes offered in evidence were executed by Lazear Brothers, as drawers, and were discounted by the plaintiff, as shown by the evidence, and have been held by the plaintiff ever since, and that they were so discounted by the plaintiff, looking to the said guaranty, and on the faith thereof, and that said Lazear Brothers made default in the payment of said notes, and that they still remain unpaid, except to the extent of the payments offered in evidence, then the plaintiff is entitled to recover the amount of said notes, with interest, less the payments thereon as offered in evidence, unless the jury shall find that the note for $5000, offered in evidence was in fact discounted by the plaintiff for the use and benefit of Lazear Brothers, at a rate of interest greater than six per cent., in which case the jury will find for the plaintiff only the sum actually advanced by it on said note.

And the plaintiff then offered a second prayer, conforming to the modification of his first prayer by the Court, and as a substitute therefor, which second prayer so substituted the Court granted.

The plaintiff's second prayer was merely a copy of the plaintiff's first prayer, as modified by the Court.

The Court refused all of the defendant's prayers, except the fourteenth which it "granted as a more definite explanation of the requirement to recovery asked in plaintiff's prayer," and rejected the plaintiff's exception thereto.

Whereupon the defendant excepted to the granting of the plaintiff's first prayer as modified, and of its substituted or second prayer, and to the rejection of the defendant's prayers as aforesaid, and also to the refusal of the Court to exclude the evidence, by his motion prayed to be excluded from the jury.

*Seventh Exception.*—After the case was argued to the jury by the junior counsel for the plaintiff, and was fully argued and concluded by both counsel for the defendant, and was then, and, up to the adjournment of the Court, further argued in part by the senior counsel for the plaintiff; upon the meeting of the Court on the succeeding day, and without further proceeding to conclude his argument, the senior counsel for the plaintiff asked leave of the Court to withdraw the instructions theretofore granted to the plaintiff, and to substitute therefor the instruction following:

3. If the jury find from the evidence that the guaranty offered in evidence by the plaintiff, dated Feb. 3rd, 1870, was executed by the defendant and accepted by the plaintiff, and that the seven promissory notes offered in evidence were executed by Lazear Brothers, as drawers, and were discounted by the plaintiff at the times shown by the evidence, and have been held by the plaintiff ever since, and that said Lazear Brothers made default in the payment of said notes, and that they still remain unpaid, except to the extent of the payments offered in evidence, then the plaintiff is entitled to recover the amount of said notes with interest, less the payments thereon as offered in evidence, unless the jury shall find that the note for $5000, offered in evidence, was in fact discounted by the plaintiff for the use and benefit of Lazear Brothers, at a rate of interest greater than six per cent., in which case the jury will find for the plaintiff only the sum actually advanced by it on said note.

The Court accepted and granted said prayer, and endorsed thereon: "This prayer is allowed to be offered

and substituted for that offered yesterday by the plaintiff."

The plaintiff also asked of the Court the instruction following:

4. That the Court will reject the fourteenth prayer of the defendant granted as an explanation of the plaintiff's prayer.

The Court endorsed thereon: "The Court having granted the prayer of the plaintiff in substitution for that offered yesterday, rejected the defendant's fourteenth prayer."

And thereupon the defendant objected to the granting of the two last mentioned prayers of the plaintiff and the substitution of the first thereof for the plaintiff's prayer theretofore granted; and further insisted as a separate ground of objection, that the said two prayers could not, nor could either of them, properly be entertained or granted at that stage of the case, under the rules of the said Court. But the Court overruled the objections, and granted the two prayers of the plaintiff last offered as aforesaid, and permitted the first of said last offered prayers to be substituted for the plaintiff's prayer theretofore previously granted, and the latter to be withdrawn by the plaintiff, which was done; and in conformity with the second of said last offered prayers of the plaintiff, the Court further withdrew and excluded from the consideration of the jury the fourteenth prayer of the defendant, theretofore granted, and rejected the same. To all of which rulings of the Court, and to each thereof, the defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ALVEY, J.

*R. Stockett Mathews* and *S. Teackle Wallis*, for the appellant.

I. The propositions of law arising out of the appellant's first, second, fourth and fifth bills of exception, taken to the rejection of testimony which had been offered, for the purpose of enabling the Court to give to the guaranty such a construction as would best accord with the intention of the parties, as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates, as well as the propositions of law embodied in the appellant's first, first and a half, fourth and fourteenth prayers, are all based upon the well-known rule of law, that a guaranty "is to be construed according to what is fairly presumed to have been the understanding of the parties, without any strict technical nicety." *Lee vs. Dick,* 10 *Peters,* 493. And such understanding is to be ascertained from the facts and circumstances accompanying the entire transaction. *Bell, &c. vs. Bruen,* 1 *How.,* 187. To ascertain the intention of the parties is the great object of the Court in construing all instruments, and this is especially the case in acting upon guaranties. *Mauran vs. Bullus,* 16 *Peters,* 528.

"It may now be safely laid down that the proper rule for the construction of a guaranty is that applied to other contracts—to give the instrument that effect which shall best accord with the intention of the parties, as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates; neither enlarging the words beyond their *natural import* in favor of the creditor, nor restricting them in aid of the surety." 2 *Rob. Pr.,* 286, citing *Allnut vs. Ashenden,* 5 *Man. & Grang.,* 392, (44 *Eng. Com. L. R.,* 210;) *Muey vs. Rayner,* 22 *Pick.,* 228; *Curtiss vs. Hubbard,* 6 *Metcalf,* 191 and 2; and generally in the United States, "a Court will consider that no party is bound beyond the extent of the engagement, which shall appear from the expression of the

guaranty, *and the nature of* the transaction. *Drummond vs. Presstman,* 12 *Wheat.,* 518. This Court has forcibly said in *Warner vs. Miltenberger's Lessee,* 21 *Md.,* 264, "that the construction of written documents is a matter of law, and is not in ordinary cases to be submitted to the jury as a matter of fact, is true, but where the doubt is produced by the existence of extrinsic and collateral facts not appearing upon the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for by a recurrence to the state of facts as they existed when the instrument was made, and to which the parties are presumed to have reference. The ambiguity in such case is a *latent* one, which may be explained by parol evidence, and submitted to the jury." "Such explanation not being inconsistent with the entire terms." ' *Warfield vs. Booth,* 33 *Md.,* 63; see also *Reynolds and Sauerwein vs. Davidson,* 34 *Md.,* 662; *Clarke vs. Lancaster's Lessee,* 36 *Md.,* 196.

Referring to policies of insurance, this Court has said, "but where the (their) language is susceptible of *two or more interpretations,* extrinsic evidence is admissible to explain the meaning of the parties thereto, by pointing out, and connecting it with the subject-matter to which it refers." *Planters' Mutual Ins. Co. vs. Deford,* 38 *Md.,* 382; *Frederick County Ins. Co. vs. Deford,* 38 *Md.,* 404.

The Supreme Court of the United States in a recent case, (October Term, 1877,) in passing upon written terms introduced into the body of a printed policy for marine insurance, so as to exempt the company from their risk "*while the vessel was at Baker's Island loading,*" was called upon to construe the extent and nature of the exemption. The construction turned upon the point whether the clause meant *while the vessel was lying at Baker's Island for the purpose of loading,* or while the vessel was there *actually loading.*

And Mr. Justice BRADLEY in delivering the opinion of the Court says: "A strictly liberal construction would favor the latter meaning. But a rigid adherence to the letter often leads to erroneous results, and misinterprets the meaning of the parties. That such was not the sense in which the parties used the words in question, is manifest, we think, *from all the circumstances of the case.* (He does not say 'is manifest from an *inspection* of the instrument— from the *face* of the instrument, but from *all* the *circumstances* of the case.') Although written instruments cannot be varied (by addition or subtraction,) by *parol proof of the circumstances out of which they grew*, and which *surrounded their adoption*, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter, *and the standpoint of the parties in relation thereto.* Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable, as that of the language in which the instrument is written." And he quotes with approbation, from 1 *Greenleaf's Ev.* sec. 277, and *Taylor's Ev.*, secs. 1082 *and* 1085, and cites in support of his view, *Thorington vs. Smith*, 8 *Wall.*, 1, and *Maryland vs. Balto. & Ohio Railroad Co.*, 22 *Wall.*, 105.

The offers of testimony which were rejected, had no other object than to inform the mind of the Court, through "preliminary knowledge," "of the actual condition of things at the time" of the execution of the guaranty, "as they appeared to the parties themselves," so that the Court, availing itself "of the light of the surrounding circumstances as they appeared, or must be supposed to have appeared to the parties at the time of the execution of the guaranty," could surely and judicially ascertain their intentions, and their understanding of its terms. *Reed vs. Insurance Co.*, 5 *Otto*, 30, 31.

The guaranty was, as it virtually declared upon its face, a running contract of indemnity in lieu of the guarantor's endorsement upon *certain paper*, to the extent of $25,000. What was that paper?—notes of Lazear Brothers, of which they were either drawers or endorsers. Surely upon the most casual inspection of such an instrument, the most natural, and most pertinent inquiry which would suggest itself to an unbiased mind, would be this. "Why was this paper executed? What were the circumstances antecedent to, and attending its delivery?" And if these queries had come into the mind of the Court, then there was but one possible mode of gratifying them, and that was by asking for just such proof as the appellant's offers propounded; proof of collateral, extrinsic facts, absolutely essential to a right and true understanding of the instrument.

Looking at the contract, from the standpoint of the parties, at the time of its execution, it is respectfully insisted on behalf of the appellant, that in all cases, upon written contracts, and especially upon guarantees, it is competent for either or both parties to give in evidence, by parol, all the circumstances out of which the contract grew, and which surrounded its adoption, for the purpose of enabling the Court to ascertain the subject-matter and the standpoint of the parties in relation thereto, and to determine, in the light thereof, the sense intended to be conveyed by the language used.

And even if the language as used appears on its face to have but one meaning; it is competent for either party to show, by parol proof of circumstances that there is, nevertheless, ambiguity or uncertainty in it, and to remove that ambiguity or uncertainty by further proof of the same nature. Such evidence is not allowed for the purpose of enabling a new contract to be set up by parol, in derogation of the contract written. It is, on the contrary, sanctioned and encouraged as the best mode of getting at the meaning of the words used by the writer.

It puts the Court in his place, informs it of what was in the mind of the parties, and what their attention was directed to, and enables it to judge of the subject to which the words used were intended to apply, and to the application which they were meant to have to the subject. 1 *Greenleaf's Evid.*, secs. 277, 286; 2 *Taylor's Evid.*, sec. 1082; 2 *Wharton's Evid.*, secs. 937 *to* 941, *and notes; De Colyar on Principal and Surety*, 214, 215; *Browne on Stat. Frauds*, sec. 409 *a*; *Brandt on Suretyship and Guaranty*, secs. 72, 97, 130, 352, *and notes; Marshall vs. Haney*, 4 *Md.*, 506, '7; *Strawbridge vs. B. & O. R. R. Co.*, 14 *Md.*, 360, 367; *Stockham vs. Stockham*, 32 *Md.*, 207; *Warfield vs. Booth*, 33 *Md.*, 69; *Basshor vs. Forbes*, 36 *Md.*, 166; *Fryer vs. Patrick*, 42 *Md.*, 54, 55; *Wehr vs. Germ. Evang. Luth. Ch.*, 47 *Md.*, 192, 3, 187; *Drummond vs. Presstman*, 12 *Wheat.*, 515; *Bradley vs. Washington, &c., Company*, 13 *Peters*, 97; *Bell vs. Bruen*, 1 *Howard*, (*S. C.*,) 183, 186, 187; *Laurence vs. McAlmont*, 2 *Howard*, 449; *Maryland vs. B. & O. R. R. Co.*, 22 *Wall.*, 105; *Reed vs. Insurance Co.*, 5 *Otto*, 30, 31; *Shore vs. Wilson*, 9 *C. & F.*, 355, 365; 1 *Chitty on Contracts*, (11*th Am. Ed.*,) 147–8, and cases cited in notes *n* and *o*.

Parol evidence may be given for the purpose of *raising* and explaining a *latent* ambiguity. 1 *Chitty on Contracts*, 149, and cases cited in notes, t and t¹,—especially the cases in the *Massachusetts Reports*, as follows: *Hurley vs. Brown*, 98 *Mass.*, 545; *Stoops vs. Smith*, 100 *Mass.*, 63, and cases cited; *Putnam vs. Bond*, 100 *Mass.*, 58; *Miller vs. Stevens*, 100 *Mass.*, 518; *Pike vs. Fay*, 101 *Mass.*, 134; *Sugden on Vendors and Pur.*, (8*th Am. Ed.*,) 169, 170, *and notes; Brown vs. Brown*, 8 *Metcalf*, 576.

" The surrounding circumstances" are frequently looked at, where the contract requires explanation; *e. g.* to ascertain the subject-matter of the contract. *De Colyar on Guaranty, &c.*, 215, and cases cited in notes 1 and 2; *Heffield vs. Medows*, *L. R.*, 4 *C. P.*, 595; *Chalmers vs.*

Lazear *vs.* Natl. Union Bank of Md.

*Withers,* 16 *W. R.,* 1046; *Cole vs. Pack, L. R.,* 5 *C. P.,* 65, 70, 71; *Laurie vs. Scholefield, L. R.,* 4 *C. P.,* 622; *Leathley vs. Speyer, L. R.,* 5 *C. P.,* 595, 605, 606; *Good vs. Martin,* 5 *Otto,* 90, 91; *Wood vs. Priestner, L. R.,* 2 *Exch.,* 66; *Heffield vs. Meadows, L. R.,* 4 *C. P.,* 599; *Coles vs. Pack, L. R.,* 5 *C. P.,* 69; *Stoops vs. Smith,* 100 *Mass.,* 63; *Sanford vs. R. R. Co.,* 37 *N. J.,* 3, 4; *Peisch vs. Dickson,* 1 *Mason,* 9; *Rayner vs. Wilson and Hunting,* 43 *Md.,* 440.

II. It is respectfully submitted that the inferior Court erred in rejecting the evidence offered as to usury, and set forth in the third exception, and in refusing the appellant's second, third, fifth, fifth-and-a-half, ninth and tenth prayers.

There was abundant evidence *dehors* the rejected interest account, that all dealings between the Messrs. Lazear Brothers and the appellee were tinctured with usury, and that all the notes of Lazear Brothers discounted for Messrs. Schurtz & Co. were also tainted with usury; and that the note purchased from Mr. Winchester, the proceeds of which the President of the appellee testified "he was under the impression went directly to the drawers, Lazear Brothers," was shaved and bought at nine per centum.

First.—Was the guaranty void, or voidable by reason of the illegality of the consideration or other illegality of the dealings it was intended to cover? It was in evidence that the discount of seven and a-half per cent. charged the Messrs. Lazear Brothers, was by agreement with them, and that this arrangement had been made prior to the execution of the guaranty, and was in force when that was delivered.

The Revised Statutes of the United States, Title "National Banks," sections 5197 and 5198, prohibit the appellee from taking, receiving, reserving or charging on any loan or discount, on any promissory note a rate of interest greater

than that allowed by the law of its domicile. A violation of the statute in this respect carries with it a forfeiture of the entire interest which has been taken, charged, &c.

· Here then, by special agreement entered into between the appellee and the principals, was a violation of the law by a continuing contract, to affect all transactions between them, and made before the guaranty was executed. How then does the law regard the effect of such a contract with the principals upon the liability of the guarantor? It avoids it, it denies that this suretyship can be perverted to protect a contract which is either expressly, or by implication, forbidden by the common law or by statute. 2 *Chitty on Contracts,* 971.

No right can be derived from any agreement made in express opposition to the laws of the place where it is made. *Hall vs. Mullin,* 5 *H. & J.,* 193.

Here the agreement of the principals was illegal from its origin. The guaranty was exacted by the appellee with reference to it, to make it good. Any security given in payment or discharge of an usurious security is void. 2 *Parsons on Contracts,* 396, *and note z.*

A contract that is illegal in itself, or that contemplates the violation of some statute * * * cannot invoke the aid of a Court of justice. *Merrick vs. The Bank, &c.,* 8 *Gill,* 64 ; *Freeman & Sedgwick vs. Sedgwick,* 6 *Gill,* 29 ; *Bayne vs. Suit,* 1 *Md.,* 85 ; *De Sobry vs. Delaistre,* 2 *H. & J.,* 191 ; *Ringgold vs. Tyson,* 3 *H. & J.,* 172.

Gaurantees to indemnify illegal acts are absolutely void. *Addison on Contracts,* 51, (*Ed.* 1857) ; 2 *Evans' Pothier on Obligations,* 1–15 ; *see Ives vs. Jones,* 6 *Iredell,* 538.

Usurious securities are not only forbidden as between the original parties, but the illegality of their inception affects them in the hands of third parties. *Lloyd vs. Scott,* 4 *Peters,* 205 ; *Hill vs. Scott,* 5 *Cranch C. C.,* 523 ; *Moncure vs. Dermott,* 13 *Peters,* 345 ; *Walker vs. Bank of Wash.,*

Lazear *vs.* Natl. Union Bank of Md.

3 *Howard*, 62 ; *The Panama Olcott R. R.*, 343 ; *Trumbo vs. Blizzard*, 6 *G. & J.*, 18 ; *Andrews vs. Poe*, 30 *Md.*, 485.

Secondly.—Whatever rule may exist as to the non-forfeiture of an entire debt which is based upon an illegal consideration under the usury laws of Maryland, (and it must be remembered that they differ very materially from the Act of Congress forbidding the inception of usurious contracts) between the parties thereto, or privies, still it is urged that the appellant is entitled to have deducted from the claim made upon the notes in evidence all illegal interest which was received and reserved by the bank after the delivery to it of the guaranty. The appellant guaranteed the payment only of a *legal* debt.

The appellee did what it was forbidden to do, in charging usurious interest. The statute declares that the entire interest so charged shall be forfeited. The Supreme Court has decided that National Banks are not governed by the usury laws of a State—and the only *penalties* incurred by them for taking excessive interest are those imposed by the National Banking Act. (91 *U. S.*, 29.)

The provisions of the Banking Act supersede the laws of the State upon the subject. So that usury does not work a forfeiture only of the excess of interest under that law, as it does under ours.

" Observe, it is the entire interest which the bill or note carries with it that is forfeited. * * * * The illegal act destroys the interest-bearing power of the obligation." *Lucas vs. Gov't Nat. Bank*, 78 *Penn.*, 231.

The appellee has taken that which it had no power, no right to take ; its holding is equally prohibited with the taking ; it is a wrong-doer, has no property in what it has taken, and its possession is that of a trustee or bailee for the Lazears, and by relation of the guarantor. *Overholt vs. The National Bank of Mt. Pleasant*, 82 *Penn.*, 490 ; *Brown vs. N. B. of Erie*, 72 *Penn.*, 209.

The surety may plead any equitable *set-off*. *De Colyar on Guaranty, &c.*, 325, 326 ; *Whitehead vs. Peck*, 1 *Kelly*, 140 ;

*Andrews vs. Varrel,* 46 *N. H.,* 17 ; *Hollister vs. Davis,* 54 *Pa.,* 508 ; *Cowen vs. Pillsbury,* 33 *N. H.,* 710 ; *Cole vs. Justice,* 8 *Ala.,* 793 ; *Bronaugh vs. Neal,* 1 *Robinson,* (*La.,*) 23.

III. The Court erred in rejecting the defendant's seventh prayer. This prayer was intended to apply to the note for $5000, which the testimony shows was bought of Winchester & Son, note and bill brokers.

The appellee, a National Bank, never acquired any legal title to this note, and had no power or authority as a National Bank, to *purchase* such a note ; the United States statutes, under which it was chartered, and was governed at the time it obtained the note, gave it no such power. *Weckler vs. First Nat. Bank,* 42 *Md.,* 581 ; *First National Bank of Rochester vs. Pierson,* 24 *Minnesota,* (*Thompson's Bank Cases,*) 637 ; *Farmers' & Mechanics' Bank vs. Baldwin,* 23 *Minn.,* 198 ; *Niagara Co. Bank vs. Baker,* 15 *Ohio,* 68 ; *Talmage vs. Pell,* 3 *Selden,* 328.

Such corporations have no powers, except such as are expressly granted. *Weckler vs. First Nat. Bank,* 42 *Md.,* 581 ; *Steam Nav. Co. vs. Dandridge,* 8 *G. & J.,* 318 ; *Fowler vs. Scully,* 72 *Penn.,* 456 ; *Wiley vs. First Nat. Bank of Brattleboro,* 47 *Vermont,* 546 ; *First Nat. Bank vs. Ocean Nat. Bank,* 60 *N. Y.,* 278 ; 2 *Kent Com.,* 299.

If the appellee had any power to purchase a promissory note, it was by virtue of the Act of Congress, known as the National Banking Act, section 5136 of the Revised Statutes of the United States. This section, of course, is to be construed in the light of the other sections relating to the subject, as well as the general policy of the law relating to banking corporations.

This section provides, that such Bank or association may, by its officers, "exercise under this Act all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, by receiving deposits, by buying and selling ex-

change, coin and bullion, by loaning money on personal security, by obtaining, issuing and circulating notes according to the provisions of this Act. * * * And its usual business shall be transacted at an office or banking-house located in the place specified in its organization certificate." The Act, by its last section, provides that Congress may at any time amend, alter or repeal it, so that since the Revised Statutes such banks have been subject to its provisions.

In establishing National Banks, it was not the design of Congress to make them brokers and competitors to an indefinite extent, which would be hazardous to the shareholders, injurious to the credit of the Banks themselves, and destructive of the very object for which they were established.

Of course, if National Banks have the power to purchase promissory notes at all, they may do so to *any extent*, and for any *price*, and upon any *terms* they please. The power to purchase promissory notes is not necessary as one of its *incidental powers* to carry on the business of banking.

Is it given in clear express terms, by any of the provisions of the statute? It cannot be said that the word " negotiating," means purchasing—it means simply power to transfer by endorsement, or otherwise, such promissory notes as the bank may have acquired in its legitimate business. *Weckler vs. First Nat. Bank*, 42 *Md.*, 581.

In construing a statute relating to banking or commercial paper, regard must be had to the commercial meaning of the language used. The word *negotiate*, simply means that the Bank had the power *to sell* that to which it had acquired title by a discounting in the regular course of its business. The power " to negotiate " a bill or note, is the power to *endorse* and *deliver it* to another, so that the right of action thereon shall pass to the endorser or holder. *Per* MILLER, J., *in Weckler's Case*, 42 *Md.*, 592.

*Negotiate* and *negotiable*, as applied to promissory notes and bills of exchange, relate to selling and *transferring* such paper, or what may be transferred by a sale and endorsement, or delivery, and collected in the name of the holder. The subsequent clause of said section, relating to what the bank may *buy*, does not include promissory notes. Is it not clear, then, that the power to purchase promissory notes is clearly *denied*, instead of being expressly given? *First National Bank vs. National Exchange Bank*, 2 *Otto*, 128.

Section 5197, regulating the rate of interest to be taken by the National Banks, is peculiar and guarded in its language. It provides that they "may take, receive, reserve and charge on any *loan* or *discount* made, or upon any *note, bill of exchange,* or *other evidences of debt*," such interest as is allowed by the local law. Where there is no rate so prescribed, they are allowed to "take, receive, reserve or charge a rate not exceeding *seven per centum*, and such interest may be taken in advance, reckoning the days for which the *note, bill* or *other evidences of debt* has to run. And the *purchase, discount* or *sale* of a *bona fide bill of exchange*, payable at another place than the place of such *purchase, discount* or *sale*, at not more than the current rate of exchange for sight drafts, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest." It is impossible to deny that a plain distinction is here drawn between purchasing and discounting commercial paper, and that while the power to purchase bills of exchange is specifically recognized, the power to purchase promissory notes is as conspicuously withheld. Coupling this with the power conferred by section 5136, to *discount* promissory notes, drafts, bills of exchange alike, and the additional power to "*buy* exchange," but not to buy notes, the inference seems irresistible, that the purchase of bills was meant to be allowed by section 5136, and the purchase of notes was not, and that section 5197

was deliberately and carefully drawn, to carry out this distinction and accommodate the rule of interest to the differing conditions which it involves.

The Bank not having the power to purchase notes, acquired no title to, and cannot maintain an action upon the note in question. *N. Y. Fireman Ins. Co. vs. Ely,* 5 *Conn.,* 560; *Head vs. Prov. Ins. Co.,* 2 *Cranch,* 127; *Life and Fire Ins. Co. vs. Mechanics' Ins. Co.,* 7 *Wend.,* 34.

IV. The Court below plainly erred in instructing the jury that the appellee was entitled to recover, even although they should find that the notes sued on as guaranteed, had not in fact been discounted by the appellee on the faith of the guaranty. This ruling the Court arrived at, by reversing its previous instruction to the contrary, embraced in the appellant's fourteenth prayer, and by modifying the appellee's own first prayer, in which it was conceded, that there could be no recovery, unless the notes had been discounted by the Bank, "looking to the said guaranty, and on the faith thereof." The doctrine thus sanctioned is at war with the rudimental principles of the law of guaranty. The fact that the thing done and constituting the ground of action, was done on the faith of the guaranty, is the only consideration in cases like the present, which makes the guaranty obligatory and the guarantor bound. If the thing done was not done on the faith of the guaranty, then the guaranty plainly was no part of the consideration for which it was done, nothing passed from the plaintiff in consideration of the defendant's guaranty; he lost nothing and parted with nothing on account of it or by reason of it.

This is illustrated by the very form of a declaration upon guarantees. 1 *Harris' Entries,* 241, 245; 1 *Evans' Harris,* 219; 4 *Robinson's Practice,* 389 to 392, 398.

And it is the *rationale* of the received doctrine that a guaranty of an existing debt, which was not created at the defendant's request or upon his responsibility, is

void, unless supported by some new consideration. *De Colyar on Prin. and Surety*, 25; *Standley vs. Miles*, 36. *Miss.*, 434; 1 *Chitty on Contracts*, 62, 740.

It will be found to be the universal doctrine in both the Federal and State Courts. 1 *Chitty on Contracts,* (11*th Amer. Edit.,*) 742, note b[1], and cases there cited; *Caton vs. Shaw & Tiffany*, 2 *H. & G.*, 22; *Douglas vs. Reynolds*, 7 *Peters*, 119, 120; *Adams vs. Jones*, 13 *Peters*, 213; *Clarke vs. Remington*, 11 *Metc.*, 361; *Mayfield vs. Wheeler, Geiger & Co.*, 37 *Texas*, 259; 2 *Parsons on Contracts*, 7; *Brandt on Suretyship and Guaranty, sec.* 163.

*John N. Steele* and *I. Nevett Steele*, for the appellee.

The questions presented by the first exception arise upon the rejection, by the Court below, of the defendant's offer of parol evidence, for the purpose of showing that the liabilities of Lazear Brothers, for paper discounted for them, and not their liabilities for their paper held by the Bank, but not discounted for them, was the subject of the guaranty; and also of showing what was the subject of the guaranty—what its real consideration—whether or not it was a continuing guaranty; and also to show a latent ambiguity as to the subject of the guaranty. The Court below was right in rejecting this evidence. The language of the guaranty is clear and unequivocal. It extends to and covers "*all liabilities* to said Bank, of Lazear Bros., now existing, or which may hereafter arise;"
\*   \*   \*   "*all paper* that may be held by the Bank of Lazear Bros., either as drawers or endorsers."

The principal purpose of the offer was obviously to contradict the written contract, and substitute for the stipulations which it contains others entirely different; to prove, in direct contradiction of its language, that the guaranty did not cover "all liabilities," "all paper," but only extended to a particular class of liability or paper; viz., liability incurred on discounts, and paper discounted for the direct benefit and account of Lazear Bros.

It is clear that there was no latent ambiguity in the case when the evidence was offered; and it is equally clear, that the excluded evidence does not show or create one. It does not show two or more classes of subjects to which the language of the guaranty is equally applicable, but seeks to establish new terms in the contract, inconsistent with, and in contradiction of, the written paper.

As to the guaranty being a continuing one, it was sued upon and claimed to be such by the plaintiff; and the excluded evidence did not tend to prove that it was not. The character of the guaranty in this respect is conclusively fixed by its own language, as it in terms extends to "all liabilities now existing, or which may hereafter arise," &c. 2 *Taylor on Ev.*, sec. 1035, (*note VII*,) 1036, 1053, 1088–9; 1 *Greenleaf on Ev.*, sec. 275; *Frank vs. Miller*, 38 *Md.*, 450; *Clarke vs. Lancaster's Lessee*, 36 *Md.*, 196; *Stockham vs. Stockham*, 32 *Md.*, 196; *Bladen vs. Wells and Wife*, 30 *Md.*, 577; *Taggart vs. Bouldin & Thayer*, 10 *Md.*, 104; *Mitchell vs. Mitchell*, 6 *Md.*, 224; *McElderry vs. Shipley, et al.*, 2 *Md.*, 25; *Stringer vs. Gardiner*, 5 *Jurist*, (*N. S.*,) 260; *Miller vs. Travers*, 8 *Bing.*, 244; *Bainbridge vs. Wade*, 16 *Ad. & Ell.*, (*N. S.*,) 89; *Boston, &c., Glass Co. vs. Moore*, 119 *Mass.*, 435; *Barnstable Savings Bank vs. Ballou*, 119 *Mass.*, 487; *St. Louis Perpetual Ins. Co. vs. Homer*, 9 *Metcalf*, 39; *Doe vs. Webster*, 12 *Ad. & Ell.*, 442, 449; *De Colyar on Guaranty, &c.*, 238 *to* 248; *Goss vs. Lord Nugent*, 5 *Barn. & Ald.*, 58; *Harvey vs. Grabham*, 5 *Adol. & Ell.*, 61–74; *Marshall vs. Lynn*, 6 *M. & W.*, 109; *Mitchell vs. Ins. Co.*, 54 *Georgia*, 289; *Oliver vs. Shoemaker*, 35 *Mich.*, 464; *McEwan vs. Ortman*, 34 *Mich.*, 325; *Jones vs. Albee*, 70 *Ill.*, 34; *White vs. Ashton*, 51 *N. Y.*, 280; *Ins. Co. vs. Maury*, 6 *Otto*, 544, 7, 8; *Holmes vs. Mitchell*, 7 *C. B.*, (*N. S.*,) 361; *Grant vs. Naylor*, 4 *Cranch*, 235.

In respect to the *third* exception. The sections 5197 and 5198 of the Revised Statutes of the United States, to which

the offer makes reference, authorize the party who has paid usurious interest to a National Bank, or his legal representatives, to recover twice the amount of interest paid, provided the suit is brought within two years. This remedy is exclusive of all others. To the claim now set set up by the defendant it is a sufficient answer to say that no suit was brought within the two years. Besides this, no person can sue under the statute, except the party who has paid the usurious interest, and with him it is optional for two years only, whether, having borrowed money at an agreed rate of interest, and having honestly paid the debt, he will seek to recover against the bank the statutory penalty for a contract which he himself had willingly entered into. That which is to be recovered in such a suit is a penalty, and even where two years limitation does not bar, as it does in this case, it could scarcely be maintained that a claim to penalty for past usury in other transactions could be recouped or set off in an action to recover against the drawer of certain notes. However this may be, clearly the plaintiff does not owe the defendant anything upon the evidence in this case ; and, therefore, there is nothing to be recouped or set off by him. Further, recoupment is an equitable doctrine, and would not apply to a statutory penalty, and it is also confined to claims arising out of the same transaction, and therefore, would not extend to the claim in this case, which has no connection with the causes of action sued upon. *Abbott vs. Gatch,* 13 *Md.,* 314; *Wiley vs. Starbuck,* 44 *Ind.,* 298 ; *La Farge vs. Halsey,* 4 *Abbott Pr.,* 397 ; *St. Louis Perpetual Ins. Co. vs. Homer,* 9 *Metc.,* 39 ; *Waterman on Set-Off,* 44, 53 *and* 478–9, *notes;* 1 *Parsons on Con.,* 246.

Prayers one and one-and-a-half of defendant, submit directly to the jury the construction of the written guaranty, upon the whole evidence in the cause. These prayers were properly rejected.

1. Under the established rule of law, the construction of the written guaranty is for the Court and not the jury.

2. The construction which, by these prayers, the jury is authorized, upon their views of the parol evidence in the cause, to give to the written paper, changes and contradicts the plain and unambiguous meaning of the paper itself. The law does not permit either Court or jury to give such effect to parol evidence. There would be an end of this rule, if what was meant and intended by a written contract was left to be found by a jury upon such parol proof as the parties might bring before them.

The defendant's second, third, fifth, fifth-and-a-half, eighth, ninth and tenth prayers relate to the effect of usury on the plaintiff's right to recover.

The second, third, eighth, ninth and tenth, are all open to the objection that they leave it to the jury to interpolate a new term into the contract, by finding that it was intended to cover or not to cover usurious transactions, when the written contract itself covers all paper and all liabilities, without making any such distinction or limitation. Whether the contract applied to usurious discounts, was a question for the Court.

Of the seven notes offered in evidence by the plaintiff, six were discounted for Schurtz & Co., and the usurious interest was paid by them. The seventh note was *purchased* from Winchester & Son, according to the view on the part of the appellant, and not discounted at all; and no question of usury could, in that event, arise upon it. The appellee contends, however, that it was in fact discounted for Lazear Brothers, and is to be so treated and regarded.

The fifth prayer asks *the Court* to say that the guaranty, properly construed, does not apply to these usurious transactions.

Prayer five-and-a-half asks the Court to say that there was no evidence in the cause that defendant contemplated or knew of the usurious transactions, and that without such evidence the plaintiff could not recover.

All these prayers seem to be founded on one or the other of the two propositions, that the guaranty, if valid, could not protect or be applied to usurious transactions; or, that if the guaranty was given for the purpose of covering such transactions, it was illegal and void.

Each of these propositions is, upon principle and authority, vitally erroneous, and the Court below properly rejected these prayers.

1. The usury did not make void the notes usuriously discounted, or the contract of the defendant to be liable upon them as the endorser.

Sections 5197 and 5198 of the Revised Statutes of the United States, do not make a usurious contract void, but provide specific penalties for the infraction of their provisions; the penalty where usurious interest has been actually received by the National Bank, as in this case, being the right conferred on the party who has paid the interest to recover back twice its amount; provided the suit be brought within two years.

Where the statute has not declared the contract void, and has fixed a specific penalty for usury, the Courts cannot inflict a greater penalty by debarring recovery, and thus forfeiting the whole debt. *Wiley vs. Starbuck,* 44 *Ind.,* 298; *Fleckner vs. U. S. Bank,* 8 *Wheaton,* 338, 355; *Farmers and Mechanics' Nat. Bank vs. Dearing,* 1 *Otto,* 29; *Burnhisel vs. Firman,* 22 *Wall.,* 170; *Harris vs. Runnels,* 12 *Howard,* 79; *Bandel vs. Isaac,* 13 *Md.,* 202; *Dudley vs. Mayhew,* 3 *N. Y.,* 9.

2. The penalty of twice the amount of the usurious interest can, under the terms of the statute, only be recovered by the party who has paid that interest, or his legal representatives. This would be so held by the Courts, even if the language of the statute was not so specific, because the person paying the usury is the party injured, and, therefore, rightly entitled to the remedy.

This being the only forfeiture imposed, if the party entitled to it does not deem it right or proper to sue, no one else who may be liable on the note usuriously discounted, as endorser, drawer or otherwise, has any right to impeach the note on the ground of usury. It is good as to all the world.

The liability of the defendant was, by the terms of the guaranty, that of an endorser; but whether his suretyship was by means of endorsement or guaranty, if he intended that the paper guaranteed should not be usuriously discounted, he should have so stipulated. In the absence of such a stipulation, even in the case of discounts for Lazear Brothers, they were left at liberty to make their own terms as to interest. In the case of the six notes discounted usuriously for Schurtz & Co., manifestly the rate of interest did not concern the defendant. *National Bank vs. Garlinghouse*, 22 *Ohio*, 492; *Selser vs. Brock*, 3 *Ohio St.*, 302; *Hough vs. Horsey*, 36 *Md.*, 181–185; *Smith vs. Exchange Bank, &c.*, 26 *Ohio*, 141.

The proposition asserted in the defendant's seventh prayer is that if the note was obtained by purchase, and not by discount, the bank could not recover on it.

Mr. Taylor proves that this note was presented to the Board of Directors, and was purchased or discounted by their order—that the Board did not consider paper offered by brokers, until the offering of customers was disposed of, and that then, if the Bank had unemployed funds, it sometimes invested them in outside paper—that it never bought or discounted a note from a broker, except when there was more money on hand than was employed in discounting the regular offering of customers. Mr. Taylor also proved that at the time of buying or discounting this note he had an impression, he believed, that it was for the benefit of Lazear Brothers, and that they were getting the proceeds of it.

Winchester proves that Winchester & Son, brokers, tendered and sold the note to the plaintiff for the drawers, who received the proceeds of sale.

1. Even then, if the jury should find that Lazear Brothers did not direct the brokers to offer the note at the National Union Bank, and did not know that it was so offered, still the brokers were their agents, to negotiate the paper, and, without disclosing their principals, obtained the money on the note for them. Of course, if Lazear Brothers had, themselves, offered the note, and got the money, less the discount, it would have been a discounting of the note in the strictest sense of that term. If they did the same thing by their agent, and ratified his act by receiving and keeping the money, it was equally in law and fact, a discount of the note for them.

If, then, it be conceded, for the purposes of the argument, that section 5136 of the Revised Statutes did not give the Bank power to purchase the note, yet this transaction upon the facts referred to was authorized, because Lazear Brothers were, in truth, the borrowers of the money upon their own note, and it was, in fact, discounted for them. The prayer, therefore, which utterly ignored these facts, was properly rejected. It would be a most unjust and unreasonable construction of section 5136 of the Statutes, and a violation of the plain principles of the law of agency, to hold that *Lazear Brothers* could get from the Bank the money for their own note, less the discount, and then be permitted to refuse payment of it, because their agent in the matter did not disclose his principal, and the Bank, therefore, although it believed, yet did not positively know, that the money was obtained for them when it took the note.

2. The words of the Statute, "by discounting and negotiating promissory notes," do not necessarily mean discounting only for a party to the note, but may reasonably include discounting for any holder of such paper. But if

this be not so, and there be no express authority to *buy* promissory notes, as part of the general business of banking, yet it would seem to be clear, that as a power necessarily incidental to that business, which includes the receipt of deposits, the National Banks have the right, when the regular business of banking leaves a surplus of money on hand unemployed, instead of letting that surplus lie idle, to invest it temporarily in promissory notes, if such investment shall be deemed advisable.

3. But even if the purchase of a promissory note is, under all circumstances, in contravention of section 5136 of the Statutes, the note is not thereby made void, and the right of recovery upon it defeated.

In construing these general public Statutes, the rule is to look for the intention of Congress, and to give such construction as will best carry that intention into effect. Now, the National Banks are agencies and instrumentalities of the United States Government; they hold its bonds; they obtain from it notes for their circulation, &c.; and the Government, as well as the public, has an interest in their soundness and stability. The Statute is an invitation to those who have capital, to subscribe as stockholders, and create these institutions, and it aims to promote and protect the interests of the Government, the public, and the stockholders. In view of this, it is not possible to suppose that Congress intended that the purchase of a note by a Bank should make the note void and defeat recovery upon it. Such a construction would inflict a direct loss and injury upon the stockholders and the Bank, and, to that extent, injuriously affect the soundness of the Bank, and the interests of the Government and the public therein; and would promote and protect the interest of no one, except the debtor, who seeks to avoid payment of an honest debt. If Congress had intended to visit the Banks with such a penalty, it would have said so.

It may be added that the money having been given for the note by the Bank, the contract was an executed one,

and the Bank would, therefore, be entitled to recover. *Gold Mining Co. vs. Nat. Bank,* 6 *Otto,* 640; *Shoemaker vs. Nat. Bank,* 2 *Abbott's C. C. R.,* 416; *Stewart vs. Nat. Bank,* 2 *Abbott's C. C. R.,* 424; *Shoemaker vs. Nat. Mech. Bank,* 31 *Md.,* 396; *National Union Bank of St Louis vs. Matthews,* (*U. S. Supreme Court,*) vol. 7 of "*The Reporter,*" 257, 259, 260; *Farmers' Bank vs. Dearing,* 1 *Otto,* 29; *Fleckner vs. U. S. Bank,* 8 *Wheat.,* 338, 355.; *Bandel vs. Isaac,* 13 *Md.,* 202; *Wiley vs. Starbuck,* 44 *Ind.,* 298.

The plaintiff's prayer, as first granted, put it to the jury to find, not only that the guaranty was "accepted by the plaintiff," but also that the notes offered in evidence were discounted by the plaintiff, "looking to the said guaranty, and on the faith thereof." The defendant, by his fourteenth prayer, asked the Court to say that the plaintiff could not recover, except as to such of said notes as the jury might find, from all the facts and circumstances in the case, were "discounted on the faith of the guaranty," &c. This was granted by the Court "as a more definite explanation of the requirement to recovery asked in the plaintiff's prayer." Subsequently, upon the application of the counsel for the plaintiff, the prayer of the plaintiff was modified by omitting the words "looking to the said guaranty and on the faith thereof;" and the defendant's fourteenth prayer, which had been granted as an explanation of those words, was rejected.

The question then is, whether the prayer, as finally granted, is correct in point of law? If it is, then the fourteenth prayer of the defendant was properly rejected. It may be observed that the last clause in the prayer, in reference to interest, was inserted with the view of putting the prayer in a form that would leave no question for controversy, and not because the counsel for the plaintiff were of the opinion that the law required them to make that concession.

At the trial of the cause, it was expressly proved by Mr. Taylor, the President of the Union Bank, that the

notes offered in evidence were discounted on the faith of the guaranty, and there was no evidence to the contrary. The fourteenth prayer of the defendant was, therefore, upon this ground, properly rejected.

The paper sued upon in this case was not a letter of credit or an offer to guaranty, but was, by its terms and upon its face, an absolute guaranty. It had been accepted by the Bank. This was so found by the jury, to whom the question of acceptance was submitted by the prayer, (perhaps unnecessarily,) and, in fact, was not denied by the defendant, who paid that portion of the claim against him, which fell within the guaranty as he construed it. The contract between the parties was thus complete. What are its terms? It guarantees "*all liabilities to said Bank, of Lazear Brothers,*" to the extent of $25,000, and goes on to say, "I hereby holding myself liable to the Bank to that extent, *for all paper that may be held by the Bank, of Lazear Bros., either as drawers or endorsers,*" &c. Obviously, this is a general guaranty, limited only in amount. It is not of liabilities incurred or paper acquired in a particular way, or for a specified purpose, but of all liabilities—of all paper held by the Bank. When, therefore, the Bank, having accepted the guaranty, proved that it discounted the notes offered in evidence, and was still the holder of them unpaid, it brought itself within the clear and express terms of the contract; and the guaranty attached. To require it to prove affirmatively, in order to make out its case, that each note had been discounted on the faith of the guaranty, would be to interpolate a new term into the contract, inconsistent with, and contradictory of, its express provisions. The very least effect which can be given to the language of the guaranty is to relieve the Bank from the offering of such proof. *Mason vs. Prichard,* 2 *Camp.,* 436; 12 *East,* 227; *Merle vs. Wells,* 2 *Camp.,* 413; *Martin vs. Wright,* 6 *Ad. & Ell., N. S.,* 917; *Coles vs. Pack, L. R.,* 5 *C. P.,* 63; *Ex parte Littlejohn, De*

*Colyar,* 304; 3 *M. D. & D.*, 182; *Stadt vs. Lill,* 9 *East,* 348.

Even in the case of a guaranty not general in its terms, if it be absolute, or if it be accepted, and the act named in it, as the ground of the guaranty, be performed, the guaranty, *prima facie,* attaches.   Every guaranty of future transactions, impliedly requests that such transactions shall take place.   To guaranty to a merchant the cost of goods thereafter to be supplied by him to a third person, impliedly requests that goods shall be supplied, and if he accepts the guaranty and supplies the goods, the law presumes that he supplied them under, and in pursuance of, the request.   The same rule applies to the case of a guaranty to a Bank of paper of a third person which may be thereafter held by it.

The acceptance of the guaranty, and the performance of the act for which it calls, sufficiently prove the averment that the plaintiff confided in the promise of the guarantor.   *Douglas vs. Reynolds,* 7 *Peters,* 126 ; *Caton vs. Shaw & Tiffany,* 2 *H. & G.,* 21.

The guaranty in this case was a formal one, absolute on its face, and had also been accepted.   It is believed that no case can be found in the English or American Reports in which a plaintiff who had proved those facts was required to prove anything further, except that he had complied with the terms of the guaranty by doing the thing which it called for.   *Griffith vs. Turner,* 4 *Gill,* 111 ; *Sloan vs. Wilson,* 4 *H. & J.,* 322 ; *Ferris vs. Walsh,* 5 *H. & J.,* 306 ; *Grant vs. Ridsdale,* 2 *H. & J.,* 186 ; *Mitchell vs. McCleary,* 42 *Md.,* 374–377 ; *Yard vs. Eland,* 1 *Raymond,* 368 ; *Smith vs. Dunn,* 6 *Hill,* 543 ; *Whitney vs. Groot,* 24 *Wend.,* 82 ; *Jackson vs. Yandes,* 7 *Blackford,* 526 ; *Fishmonger's Co. vs. Robertson,* 5 *M. & G.,* 131–176, MAULE, J.; *Oxley vs. Young,* 2 *H. Black.,* 613 ; *Train vs. Gold,* 5 *Pick.,* 380 ; *Lent vs. Puddleford,* 10 *Mass.,* 230.

Lazear *vs.* Natl. Union Bank of Md.

The guaranty in this case was a continuing guaranty. This sufficiently appears on the face of the paper. *De Colyar on Guaranties, &c.*, 238 to 248.

GRASON, J., delivered the opinion of the Court.

This suit was instituted on a written guaranty of the appellant to the appellee, which was executed on the third day of February, 1870, and is in the following words : " For value received, I hereby guarantee to the National Union Bank of Maryland, at Baltimore, all liabilities to said Bank, of Lazear Brothers, now existing, or which may hereafter arise, to the extent of twenty-five thousand dollars, I hereby holding myself liable to said Bank to that extent for all paper that may be held by the Bank of Lazear Brothers, eithers as drawers or endorsers, in the same manner as if endorsed by me, I hereby waiving notice of protest of such paper."

The first question presented for our determination·is, whether parol evidence is admissible to show that the guaranty was intended to cover only such paper as was received by Lazear Brothers from their customers living out of Baltimore, and endorsed by Lazear Brothers and discounted by the Bank, and such other paper drawn or endorsed by them as might be discounted *for the benefit* of Lazear Brothers by the Bank. The rule is very well settled that parol evidence is not admissible to contradict, vary, add to, or subtract from the terms of a written instrument. Where parties have entered into a written agreement, it is only reasonable to suppose that they have introduced into the written instrument every reasonable and material term and circumstance ; and, consequently, all parol testimony of conversations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected. 2 *Taylor's Ev.*, sec. 1035 ; 2 *Greenl. Ev.*, sec. 275 ; *McElderry vs. Shipley,* 2 *Md.*, 25. All oral negotiations or stipulations between

the parties, preceding or accompanying the execution of a written instrument, are regarded as merged in it, and the written instrument is treated as the exclusive medium of ascertaining the agreement of the parties to it. *Bladen. vs. Wells,* 30 *Md.,* 581. This rule should be more rigidly enforced in a case like the one now under consideration, where the Statute of Frauds requires the contract to be in writing to make it valid. Where that Statute requires the contract to be in writing, it cannot be partly in writing and partly in parol. *Frank vs. Miller,* 38 *Md.,* 460 ; *Moale vs. Buchanan,* 11 *G. & J.,* 322.

But it was contended by the counsel of the appellant, that the parol evidence, offered in this case and rejected by the Superior Court, was admissible for the purpose of raising and explaining a latent ambiguity in the guaranty ; that is, that there was more than one class of paper, held by the Bank, to which the contract of guaranty might be applied, and that the parol evidence was admissible to show that the parties intended it to apply to and cover only such paper as should be discounted by the Bank *for the benefit* of Lazear Brothers. Such evidence would have been a palpable contradiction of the plain language of the guaranty, for by its very terms it covers all liabilities of said Lazear Brothers existing at the date of the execution of the contract, or which might thereafter arise, to the extent of twenty-five thousand dollars, and, to that extent *all* paper that might be held by the Bank upon which Lazear Brothers were either drawers or indorsers. There is no obscurity or ambiguity in the language employed, nor any uncertainty as to the subject-matter upon which the contract was intended to operate. The guaranty in plain and express language is made to apply to *all paper,* either drawn or endorsed by Lazear Brothers and held by the Bank, without any distinction as to whether it was discounted for the benefit of themselves or some other party. In other words, the evidence which was objected to and

ruled out, could have had no other effect than to limit and restrict the terms of the guaranty, and to show that the language used in it did not mean what it clearly and plainly expressed. The admission of such parol evidence would be a violation of the rule, to which we have adverted, and, therefore, there was no error in refusing its admission for the purpose for which it was offered, or in rejecting the appellant's prayers numbered one, one-and-a-half, and four.

It was contended, that the guaranty is void, because usurious interest was demanded and received by the Bank upon the notes now held by it, and the non-payment of which is the foundation of this suit. The United States Banking Law authorizes Banks, organized under its provisions, to receive the same rate of interest that is allowed by the laws of the States in which such institutions are located, and no more, and provides that, if more is demanded and received, the whole interest shall be forfeited or that twice the amount of interest so paid may be recovered by the person paying it, or his legal representatives, provided suit for that purpose be brought within two years from the date of the usurious transaction. See ch. 3, secs. 5197 and 5198 U. S. Revised Statutes. There is no provision, however, declaring an usurious contract void. While, as a general rule, contracts, which are in violation of the common or statute law, are void, yet this rule does not apply to cases like the present. In most of the States there are laws regulating the rate of interest, and yet we have been referred to no case, and have found none, in which a contract has been declared void, by reason of the fact, that a greater interest than that allowed by law, has been received under it, unless the law itself has provided, that the taking of illegal interest shall render the contract void. This Court, in the case of *Lester vs. The Howard Bank,* enforced the contract, notwithstanding the Bank had made the loan to Purvis, its President, in

violation of the terms of its charter, and in that case this Court said, "cases are to be found, arising under contracts made in violation of a statute, in the application to which of the general rule, Courts have been governed by the plain and obvious purposes of the law; and, in such, it has been repeatedly held, that an action would lie against a party receiving money under such a contract, upon a promise implied by law to refund it."

In the case of *Fleckner vs. U. S. Bank*, 8 *Wheat.*, 355, Mr. Justice STORY, in delivering the opinion of the Court, says: "The taking of interest by the Bank beyond the sum authorized by the charter, would, doubtless, be a violation of its charter, for which a remedy might be applied by the Government; but as the Act of Congress does not declare, that it shall avoid the contract, it is not perceived how the original defendant could avail himself of this ground to defeat a recovery." See also *Bandel vs. Isaac*, 13 *Md.*, 224, to same effect.

We think it very clear, that the demand and receipt by the Bank of usurious interest upon the notes, offered in evidence, does not avoid the contract between the appellant and the appellee. There was therefore no error in the refusal to grant the third, fifth, fifth and a half, eighth, ninth and tenth prayers of the appellant, nor in refusing his motion to withdraw from the jury the notes which had been offered in evidence subject to exception. But it was also contended, that the usurious interest, received by the Bank upon the discount of paper, upon which Lazear Brothers were drawers or endorsers, should be recouped or set off against the amount of the notes offered in evidence. It must be borne in mind, that none of the paper of Lazear Brothers discounted by the Bank, was discounted for the benefit of the appellant, and that none of the usurious interest, taken by the Bank, was paid by him. It was paid by Lazear Brothers and Schurtz & Co., and they, and not the appellant, have been the

sufferers by the exaction of illegal interest. If the notes had been discounted at the rate of interest prescribed by law, the appellant would have been in no better situation than he is now, for, if bound at all, he would have been liable for the amount of the notes, with legal interest thereon from the date of their maturity to the time of the trial of the case. But it has been frequently held that no one, except the party, who has paid it, can recover the usurious interest paid. *Smith vs. Exchange Bank of Pittsburg,* 26 *Ohio State Reps.,* 152; *Scott vs. Leary,* 34 *Md.,* 395; and *Hough vs. Horsey,* 36 *Md.,* 184. It will be found too that sec. 5198 of the Banking Act, gives the remedy in such cases to the party, who has paid the usurious interest, and to his legal representatives, provided, they bring suit to recover it back within two years from the date of the usurious transaction. It was optional with the parties, who paid it to the appellee, to institute proceedings for that purpose or not, and they have not thought proper to do so within that time and they are, therefore, now without remedy.

The Superior Court of Baltimore City was, therefore right in excluding from the consideration of the jury the statement, of the interest paid, as set out in the third exception, and in rejecting the appellant's twelfth prayer.

The appellant's seventh prayer is based upon the theory, that the note of Lazear Brothers for five thousand dollars, dated June 22nd, 1872, which was obtained by the appellee from Winchester & Son, note and bill brokers, was not *discounted* but *purchased;* that such purchase was not authorized by the Banking Act, and, consequently, that the appellee obtained no title to the note, and was not entitled to recover upon it. Sub-sec. seven of the Act enumerates the powers which are conferred upon institutions, organized under the law, and provides that such institutions "shall have. all such incidental powers as shall be necessary to carry on the business of banking; by dis-

counting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by *buying and selling exchange, coin* and *bullion*; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this title."

A corporation has no other powers than such as are specifically granted, or such as are necessary for the purpose of carrying into effect the powers expressly granted. This rule of law is so well settled that we need refer to no other case than that of *Weckler vs. First National Bank,* 42 *Md.,* 591. The only power to *buy* and *sell,* with which National Banks are clothed, is the authority given by chap. 1, sec. 5137, sub-secs. 1, 2, 3 and 4, to purchase real estate for the special purposes and under the circumstances therein stated. The Act plainly shows that it was the intention of Congress to so limit and restrict National Banks, as to prevent them from exacting and receiving a greater rate of interest than is authorized by the laws of the States, within which such institutions may be respectively located, and to prohibit them from becoming buyers and sellers of promissory notes. The evidence shows that Winchester and Son, note and bill brokers, were employed by Lazear Brothers to sell the note of June 22, 1872, to any purchasers willing to buy, and that it was sold to the appellee, over the counter of its banking house, at nine per cent. discount, for Lazear Brothers, the drawers, who received the proceeds of sale. None of the Bank officers were informed that the Winchesters were acting for Lazear Brothers, nor were the latter told to whom the note had been sold. The note was sold to the Bank on the eighth day of July, 1872. The President of the Bank testified that the note in question was purchased by order of the Board of Directors, and that he had an impression, he believed, that Lazear Brothers were to get the proceeds of it. He further proved that, after the cus-

tomers of the Bank were served, it sometimes invested its surplus proceeds in notes. We are of opinion that this transaction was an out and out purchase by the Bank, and that such purchase was without authority, and that the Bank acquired no title to the note and cannot recover thereon in this suit. While we do not mean that a National Bank may not invest its surplus *capital* in notes, we are of opinion that it has no authority to use such surplus funds, as may remain on hand from day to day, for the purpose of buying notes. *National Bank of Rochester vs. Pearson, Thompson's Bank Cases,* 637; *Farmers and Mechanics' Bank vs. Baldwin,* 23 *Minnesota,* 198. If any other construction were given to such a transaction as this, the intention of Congress to prohibit National Banks from buying and selling notes would be entirely defeated, and those institutions would be at perfect liberty to decline making discounts for their customers, and afterwards to buy up the very paper, which had been offered for discount and refused, at such price as the Bank might choose to give. The note of the 22nd June, 1872, for five thousand dollars was acquired by the appellee by *purchase* without authority to make such purchase, and it is not, therefore, entitled to the note and cannot recover upon it, and the appellant's seventh prayer ought to have been granted.

The guaranty of the appellant is shown to have been executed by him and accepted by the appellee, and the subsequent discounting of paper, of which Lazear Brothers were drawers, or which they had endorsed, furnishes *prima facie* evidence that such discounts were made upon the faith of the guaranty. But such *prima facie* evidence may be rebutted by other proof offered by the guarantor, or by facts and circumstances put in evidence by the appellee. Whether the money was parted with by the appellee on the faith of the guaranty or otherwise, is a question exclusively for the determination of the jury, and there are

some facts and circumstances appearing in the evidence, as contained in the record, which should have been submitted to the consideration of the jury, whose duty it is to determine to what weight, if any, they are entitled. We are of opinion, therefore, that there was error in rejecting the appellant's fourteenth prayer. It follows from what we have said that there was also error in granting the appellee's modified prayer, because it permitted the jury to find for the appellee the amount of the five thousand dollar note, after deducting the usurious interest received upon it, and also because it took from the jury the question whether the money obtained from the appellee had been loaned upon the faith of the guaranty.

The sixth and thirteenth prayers of the appellant were waived, or abandoned at the argument of the case, and we need not refer to them further than to say, that we think there was no error in rejecting them.

As there was error in rejecting the seventh and fourteenth prayers of the appellant, and in granting the modified prayer of the appellee, the judgment appealed from will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 19th June, 1879.)

ALVEY, J., delivered the following dissenting opinion.

I cannot agree with the majority of the Court in their conclusion as to the want of power in the Bank to acquire title to the note of $5000, obtained from Winchester & Son. . That note was made and endorsed by Lazear Brothers, and was negotiated by Winchester & Son as agents of the makers, long before the note matured. Whether the Bank knew at the time of the negotiation that the money advanced upon the note was for the makers

and endorsers of the paper, is a question, I think, quite immaterial. If Lazear Brothers had presented the paper in person and obtained the money upon the terms upon which the brokers obtained it, there would then have been no question as to the legality of the title acquired by the Bank; that, it is conceded, would have been a discount. But it is contended, and it is so held in the opinion of the majority of this Court, that, as the note was obtained from Winchester & Son, bill brokers, without disclosure at the time from them that the money was for the benefit of the makers of the note, therefore it was a purchase of the note, as contradistinguished from a discount, and that the transaction was *ultra vires,* and consequently no title to the note was transferred to the Bank. To this proposition I cannot assent.

This question, of course, depends upon the proper construction of certain provisions of the National Bank Act, under which the appellee was organized. The general purpose of its organization was "for carrying on the business of banking." By the terms of the National Bank Act, (*U. S. Rev. St., sec.* 5136,) the Bank is clothed with all the powers, except such as are expressly prohibited, usually given to and exercised by banking corporations. It is expressly authorized to exercise "all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security, and by obtaining, issuing and circulating notes." Besides the things thus enumerated which the Bank is in terms authorized to do, there are many other things that it may do, under the general power to carry on the business of banking. There is no express power given, for instance, to certify checks, or to collect notes, checks, or bills of exchange, for account of customers or correspondents; and

yet we know that such transactions constitute a large portion of the legitimate business of banking. It does not follow, therefore, that everything is prohibited that is not expressly authorized. By sec. 5197, *U. S. Rev. Sts.*, it is provided that any banking association " may take, receive, reserve, and charge on any *loan or discount* made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, etc., where the Bank is located, and no more," etc. This latter provision is under the title, " Regulation of the Banking Business."

Now, without invoking the aid of any implied power possessed by the Bank, to enable it to carry on the banking business, it is expressly authorized, as we have seen, to discount and negotiate promissory notes. What, then, is the meaning of the word " negotiate," according to its ordinary acceptation among business men ? According to the most approved lexicographers, its meaning is " to transfer, to sell, to pass, *to procure by mutual intercourse and agreement with another*, to arrange for, to settle by dealing and management." *Webster's Dic. ; Worcester's Dic.* This term would seem to be comprehensive enough for all the requirements of the case; but, by allowing the full meaning to the more exact and important term, " discount," all doubt whatever would seem to be removed. To discount is to deduct a sum of money from the debt in consideration of its being paid before the usual or stipulated time for payment. In the case of *Fleckner vs. Bank U. S.*, 8 *Wheat.*, 350, Judge Story, in delivering the opinion of the Court, having occasion to define a discount by the Bank, said : " Nothing can be clearer than that, by the language of the commercial world, and the settled practice of Banks, a discount by a Bank means, *ex vi termini*, a deduction or drawback made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the

Bank.   We must suppose that the Legislature used the language in this, its appropriate sense; and if we depart from this settled construction, there is none other which can be adopted, which would not defeat the great objects for which the charter was granted, and make it, as to the stockholders, a mere mockery." Purchase may be by way of discount, equally as a loan may be made by that means. When the party receiving the proceeds of the paper discounted is himself either maker or endorser, and the discount is made on his responsibility, he receives the money as a loan, for he is bound to return it; but if he is in no way bound on the paper, he receives the money as an advance, and as a consideration for the transfer of the paper.   Both transactions are, according to the established practice and usage of Banks, discounts, though the latter is in effect a purchase by the Bank.   The act of discounting simply has reference to the deduction from the face amount of the paper for the time it has to run to maturity, and the rate of that deduction; but whether the transaction amounts to a loan or to a purchase on the part of the Bank, depends upon other facts and condition of things. This idea of restricting the power of discounting to a transaction in which money is actually loaned upon the credit of the party passing the paper, it seems to me, is novel, and, I am sure, is contrary to the received understanding of the commercial community, and the established practice and usage of Banks.   Suppose the payee of a promissory note payable to order takes it to a Bank and procures the money on it, less the rate of discount, upon endorsement without recourse; would that not be strictly a discount within the meaning of the law, notwithstanding it would not be a loan upon the responsibility of the party obtaining the money?   Such a transaction would not be a loan at all, according to the correct meaning of the term; and yet if it be a discount, according to the modes and usages of banking, why should not any third

9                         v. 52.

party holding paper payable to bearer, or endorsed in blank, be able to negotiate that paper with the Bank, by way of discount, and transfer a good title to the Bank, notwithstanding his name might not appear upon the paper, or he incur any liability in respect to it? I cannot, I must confess, perceive the reason for the distinction that has been made in this case. It should be recollected that it is not the rate of discount, with reference to which the parties deal, that determines the question of the validity of the transfer of the paper, or the title of the Bank, though the latter may have exacted and received more than the lawful rate of discount. All the business of the National Banks is done under the restrictions prescribed by the Act of Congress; and the rate of discount is expressly prescribed, among the various regulations contained in the Act for the government of the banking business; and for taking, receiving, or charging any greater rate of interest or discount than is by the Act allowed, the Bank subjects itself to the penalties prescribed by *sec.* 5198, *of the Revised Statutes;* but the title to the paper is not thereby affected. However the transaction here involved might be characterized if it were between individuals—whether it be called shaving or otherwise—as a bank transaction, if the Bank exacted a greater deduction from the face value of the paper than the law allowed, it was excessive discount, for which it incurred the penalties of the Statute; but the transfer of the paper vested a good title in the Bank. And as by the opinion of the majority of the Court it is declared that the Bank acquired no title to the note in question, and is therefore not entitled to recover on it, I must respectfully dissent from that portion of the opinion, though I concur in the conclusions as to the other portions of the case.

After the announcement of the foregoing decision, the appellee, by its counsel, applied to the Court for a re-hearing of the question presented by the seventh prayer of the appellant, as to the right of the appellee to recover on the note of Lazear Brothers for $5000, dated the 22nd of June, 1872. The Court, in response to this application, directed a re-argument on notes.

Notes were filed on behalf of the appellee by *John N. Steele* and *I. Nevett Steele,* and on behalf of the appellant by *T. Alex. Seth, R. Stockett Mathews* and *S. Teackle Wallis.*

BARTOL, C. J. and BOWIE, BRENT, GRASON, MILLER, ALVEY and IRVING, J., participated in the decision on the re-argument.

GRASON, J., delivered the opinion of the Court.

This case was argued and decided by this Court at the April term, 1879, and is now before us again upon a re-argument granted upon the motion of the appellee. The re-argument was asked only upon the appellant's seventh prayer, which was based upon the theory that the note of Lazear Brothers for five thousand dollars, dated June 22nd, 1872, which was obtained by the appellee from Winchester & Son, note and bill brokers, was not *discounted* but *purchased;* that such purchase was not authorized by the Banking Act, and, consequently, that the appellee acquired no title to the note, and could not recover upon it. This question was most thoroughly and ably discussed by the counsel of the respective parties, and after a very careful consideration of the case, it was held that the appellee acquired the note in question by *purchase,* and not by *discount,* that such purchase was not authorized by the Banking Act, and that the appellee acquired no title to the note and could not recover upon it. This question has again been very fully argued upon notes,

filed by the counsel of the respective parties, and has again been carefully considered, and a majority of the Court concur in the opinion, heretofore filed in the case, and in the conclusions therein reached.

The judgment appealed from, will, therefore, be reversed, and a new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 1st July, 1880.)

NOTE.—The Reporter is requested to state, that Chief Judge BARTOL, who concurred in the opinion of the majority first rendered, entertaining doubts as to the correctness of the decision upon the question presented by the appellant's *seventh prayer*, requested a re-argument of that question; and upon the final disposition of the case after the re-argument, concurred in the views expressed by Judge ALVEY in his dissenting opinion. Judge IRVING concurred with Chief Judge BARTOL and Judge ALVEY in their dissent.